IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PERLEY YOUNG-GOOCH, ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | No. 15 C 11609 |
| ) | |
| ROBERT WILKIE, JR., Secretary of the United ) | Hon. Virginia M. Kendall |
| States Department of Veterans Affairs, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Perley Young-Gooch ("Young-Gooch") sued her former employer, Robert Wilkie, Jr., Secretary of the United States Department of Veterans Affairs, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-623. *See* (Dkt. No. 17). Specifically, Young-Gooch alleges disparate treatment (Count I) and retaliation for participating in a protected activity (Count II). *Id.* ¶¶ 76-79. The Defendant moved for summary judgment on both counts, *see* (Dkt. No. 44), and for the reasons discussed below, the motion is granted. [44.]

## BACKGROUND

For the purpose of this motion, the following facts are viewed in a light most favorable to the non-movant, Young-Gooch here, and all reasonable inferences are drawn in her favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

Young-Gooch is currently sixty-nine years old. (Dkt. No. 48, at ¶ 1.) In 1995, she began working as a licensed practical nurse ("LPN") at the Edward Hines, Jr. Veterans Affairs Hospital ("Hines VA"), in Hines, Illinois. (Dkt. No. 46, at ¶ 1.) Young-Gooch

1

worked in a unit for long-term nursing home patients where her duties included patient care, administering medicine, and drawing blood. *Id.* Nearly twenty years ago, in 1998 and 2002, she filed Equal Employment Opportunity ("EEO") complaints against officials at Hines VA, both of which are not a part of this current dispute, are not contained in any file reviewed by her current supervisor nor are they maintained in her official VA personnel folder. *Id.* ¶¶ 16-17.

For several consecutive years prior to 2010, Young-Gooch received an "outstanding" rating–the highest possible–on her annual performance reviews. (Dkt. No. 48, at ¶ 3.) Young-Gooch received a monetary bonus during the same years she got an "outstanding" rating.[1] *Id.* She also periodically worked overtime through a system where any nurse wanting to work overtime could sign up on a list to work and then managers of different departments at Hines VA would select names from the sign-up list during staffing shortages. (Dkt. No. 48, at ¶ 9.) Young-Gooch always put her name down on the overtime list. *Id.* In addition to Young-Gooch, three other LPNs would regularly sign up on the list and each took turns working the overtime shifts. *Id.*

Around 2009 Young-Gooch joined the Wound Care Committee (the "Committee") as the only LPN on the Committee comprising registered nurses ("RNs"). (Dkt. No. 46, at ¶ 10, Ex. 3, at 70:5-25; Dkt. No. 48, at ¶ 4.) Her duties included writing a monthly Committee report documenting treatment of wounds on the floor and the progress of treatment. (Dkt. No. 49, Ex. 1, at 69:20-25.)

---

[1] There is some dispute as to whether receiving an overall "outstanding" rating automatically resulted in a monetary bonus, however initial eligibility required an initial "outstanding rating, and it appears that Young-Gooch received a bonus for several years leading up to 2010. *Compare* (Dkt. No. 48, at ¶ 3), *with* (Dkt. No. 51, at ¶ 3) (indicating an immaterial dispute as to whether the monetary bonus was a direct result of receiving an "outstanding" rating).

2

In 2010, Sandy Szczecinski–a Clinical Nurse Manager–became Young-Gooch's direct supervisor and, according to Young-Gooch, this is when the harassment began. (Dkt. No. 46, at ¶ 3; Dkt. No. 48, at ¶ 5.) After Szczecinski became her manager, Young-Gooch stopped receiving the highest marks on her performance evaluations despite her personal belief that her work performance never declined. (Dkt. No. 48, at ¶ 6; Dkt. No. 51, at ¶ 6.) Young-Gooch alleges that Szczecinski reduced her performance evaluations by two tiers, from "outstanding" to "fully successful," as a form of harassment based on her age. (Dkt. No. 47, at ¶ 6.) The Defendant states that Young-Gooch's lower evaluations resulted from a more rigorous performance review regime implemented by the Hines VA hospital director for all employees and also on Young-Gooch's training, documentation, interpersonal skills, and breaches of hygiene policy. (Dkt. No. 46, at ¶¶ 5-6.) Because of the less than "outstanding" reviews Young-Gooch was ineligible for performance-based monetary bonuses. She alleges there were no actual changes in the review process to justify her lowered evaluations. (Dkt. No. 48, at ¶ 6; Dkt. No. 47, at ¶ 5.)

Szczecinski also removed Young-Gooch from the Wound Care Committee in February 2012 for being three months overdue on her reports and for taking excessive breaks and falling behind.[2] (Dkt. No. 46, at ¶ 10.) Young-Gooch admits that she fell behind, but claims that Szczecinski did not give her enough time to complete the reports along with her regular LPN duties. (Dkt. No. 47, at ¶ 10; Dkt. No. 49-1, at Ex. 71: 1-25, 72: 1-2.) Szczecinski placed Young-Gooch on a different committee and placed an RN who could timely complete the reports on the Wound Committee. (Dkt. No. 46, at ¶ 11.)

---

[2] There is some discrepancy in the party statements as to whether Young-Gooch was actually a Committee member as opposed to simply an employee who worked for the Committee. *Compare* (Dkt. No. 46, at ¶ 10, Ex. 3), *with* (Dkt. No. 48, at ¶ 4). The distinction is immaterial.

3

Young-Gooch further identifies three separate occasions where Szczecinski issued or threatened to issue disciplinary action against her without merit. First, on March 7, 2012, someone found medication on the bedside table of a patient, *see* (Dkt. No. 46, at ¶ 12), and Szczecinski determined that Young-Gooch failed to give the patient his medication in spite of the fact that Young-Gooch had a witness confirm that she administered the medication. (Dkt. No. 48, at ¶ 7.) Szczecinski, however, did not issue any formal disciplinary action because she was unable to determine who left the medication in the patient's room. (Dkt. No. 46, at ¶ 12.) Young-Gooch was not disciplined regarding this situation.

Second, just two days later, another Hines VA employee reported Young-Gooch for calling another nurse a derogatory name. (Dkt. No. 46, at ¶ 13.) The ensuing investigation included an interview of Young-Gooch by Szczecinski during which Young-Gooch denied having used any inappropriate language. (Dkt. No. 48, at ¶ 8.) Szczecinski ultimately issued Young-Gooch an admonishment for the incident. (Dkt. No. 46, at ¶ 13.)

Then, on March 30, 2012, Szczecinski issued Young-Gooch a letter of inquiry after she failed to sign her flow sheets documenting her contact with patients throughout her day at work. *Id.* ¶ 14. Young-Gooch does not dispute her failure to sign the sheets, but claims that she was unable to sign them before they were submitted to the floor clerk. (Dkt. No. 47, at ¶ 14.) There is some dispute as to whether Young-Gooch then referred to the floor clerk in a derogatory manner, but Szczecinski ultimately took no disciplinary action about the use of such language. (Dkt. No. 46, at ¶ 14.)

In addition to these March 2012 incidents, Young-Gooch also alleges that Szczecinski altered her schedule, thus denying her overtime and leave. For example, in August 2011, Young-Gooch requested time off for a court date due to an auto accident.

(Dkt. No. 46, at ¶ 7.) The Defendant alleges that Young-Gooch did not properly request the time off and that she refused to provide a copy of the court summons for the employment file. *Id.* Young-Gooch denies not properly requesting leave and instead claims that she put in the request four-to-six weeks in advance. (Dkt. No. 47, at ¶ 7.) Szczecinski denied the request for time off due to staffing issues but she arranged for another LPN to switch shifts. (Dkt. No. 46, at ¶ 8.) However, Young-Gooch refused this accommodation. *Id.* In the end, Young-Gooch had to utilize either annual or overtime leave for her court day. (Dkt. No. 46, at ¶ 8; Dkt. No. 47, at ¶ 8.) Then, in December 2011, Young-Gooch emailed Szczecinski claiming that the scheduling rotations were unfair because other LPNs were receiving fewer weekend and holiday shifts, which the Defendant rebuts by documenting how the shifts were evenly distributed amongst every LPN who signed up, although Young-Gooch claims she never received this explanation. (Dkt. No. 46, at ¶ 9; Dkt. No. 47, at ¶ 9.)

Young-Gooch further alleges that Szczecinski singled her out by telling other supervising RNs not to select her for overtime shifts. (Dkt. No. 48, at ¶¶ 9-10.) The Defendant responds, stating that individual nursing officers on duty are responsible for selecting LPNs and RNs for overtime shifts and that Szczecinski bore no responsibility for others not selecting Young-Gooch for particular shifts. (Dkt. No. 46, at ¶ 15.)

Young-Gooch filed her Complaint in this Court on December 23, 2015. (Dkt. No. 1.) She alleged discrimination based on her age and color and in retaliation for prior protected EEO activity. *Id.* ¶¶ 9, 12. She sought leave to proceed *pro se* but the Court ruled that she had sufficient funds to pay the filing fee (having earned over $50,000 in salary and benefits the year she filed) and directed that her motion for representation be addressed in

5

person at the initial status. (Dkt. No. 8.) She subsequently filed first and second amended complaints—the latter which is the operative complaint—through a retained attorney who represented her for approximately 7 ½ months. (Dkt. No. 14; Dkt. No. 17.) In October 2016, that attorney sought to withdraw alleging the inability to continue litigating the matter on behalf of Young-Gooch but without further explanation as protected by attorney-client privilege. (Dkt. No. 33.) The Court then recruited an attorney for her but that attorney identified a conflict and sought withdrawal which the Court also granted. *See Id.*; (Dkt. No. 37). Finally, another attorney was recruited for Plaintiff who responded to this motion. *See generally* (Dkt. No. 37; Dkt. No. 49). The operative complaint names the Secretary of the United States Department of Veterans Affairs and contains two counts (age discrimination based on disparate treatment and retaliation), and the Defendant now moves for summary judgment as to both. (Dkt. No. 44.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, here Young-Gooch. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But Young-Gooch "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir.

2017); *see also Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014).

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this burden is met, the adverse party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit – when "a non-moving party [must] respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *See Grant*, 870 F.3d at 568 (quoting *Harney v. Speedway Super America, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008); *Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

While a Title VII plaintiff must receive a "Notice of a right-to-sue" letter from the EEOC before filing a complaint in federal court, an ADEA plaintiff need only wait 60 days

after filing the EEOC charge.³ This is true whether the plaintiff is employed in the private sector or by the federal government. 29 U.S.C. § 633a(d) ("no civil action may be commenced by [a federal government employee] until the individual has given the Commission not less than thirty days notice of an intent to file such action" within 180 days of the alleged discriminatory incident); 29 C.F.R. § 1614.201(a) (same); *see also Reynolds v. Tangherlini*, 737 F.3d 1093, 1101 (7th Cir. 2013).⁴ That said, the road to judicial review under the ADEA for federal employees like Young-Gooch occurs in one of two ways: (1) the administrative-exhaustion route similar to that under Title VII whereby they file a complaint with the EEOC and comply with EEOC procedures; or (2) by filing directly in court after providing the EEOC with "not less than thirty days' notice of an intent to file" a claim. *Reynolds*, 737 F.3d at 1101; *see also* 29 U.S.C. § 633a(d); *Stevens v. Dep't Treasury*, 500 U.S. 1, 5 (1991). Here, Young-Gooch chose the administrative-exhaustion route. (Dkt. No. 46-1, at Ex. 4).

"Generally, a plaintiff may not bring claims ... that were not originally included in the charges made to the EEOC." *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011) (citing *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003)) (quotations omitted). The same "procedural regulations" governing Title VII charges applies to ADEA claims, and the Seventh Circuit utilizes the same language as to whether a claim in a complaint has been exhausted administratively: A plaintiff bringing a civil action under the ADEA against a federal employer may bring claims actually charged in the administrative

---

³ *Compare* 29 U.S.C. § 626(d)(1) (permitting suit in federal court 60 days after filing an ADEA charge with the EEOC), *with* 42 U.S.C. § 2000e-5(f)(1) (requiring a complainant to receive a right-to-sue letter from the EEOC before filing suit).
⁴ The Seventh Circuit adopted the prevailing approach applied in sister circuits whereby federal employees need not fully exhaust claims with the EEOC before filing an ADEA claim in federal court, however this does not present an issue in the current case. *See Bohac v. West*, 85 F.3d 306, 311 (7th Cir. 1996).

8

proceeding and also claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations" may be raised in the federal court complaint. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005); *see also Reynolds*, 737 F.3d at 1101-02 (citation omitted); *Teal v. Potter*, 559 F.3d 687, 691-92 (7th Cir. 2009) (citing *Jenkins v. Blue Cross Mut. Hops. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*)); *see also* 29 C.F.R. §§ 1614.103, .201, .407. In order to be considered "like or reasonably related," the relevant claim and the EEOC charge "must, at a minimum describe the same conduct or implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis removed). Whether Young-Gooch's disparate treatment and retaliation claims are within the scope of her EEOC charge is a question of law. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

Young-Gooch's contacted the Equal Employ Opportunity Commission ("EEOC") on February 9, 2012 and spoke with a Veteran's Affairs EEO counselor.[5] The counseling concluded without resolution on April 17, 2012.[6] (Dkt. No. 46, at Ex. 4.) Young-Gooch then timely filed her EEO complaint within 15 days of receipt of the Notice on May 2, 2012.[7] *Id.* at Ex. 6. Her complaint contained allegations of "unfair shift rotations"; "missed calls to prevent [overtime]"; "unable to use [administrative leave] for court date"; "performance appraisal"; and "excessive negative changes filed after EEOC filed." *Id.* On June 8, 2012, the VA Office of Resolution Management sent Young-Gooch a Notice of

---

[5] *See* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action").
[6] *See* 29 C.F.R. § 1614.105(d) ("If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint"). The fact the EEOC did not send the letter for 45 weekdays is not an issue before the Court.
[7] *See* 29 C.F.R. § 1614.106(b).

Partial Acceptance of her EEO charge, accepting for investigation her claims of hostile work environment based on reprisal. *Id.* at Ex. 4. The letter further characterized Young-Gooch's claim as being "subjected to a hostile work environment based on age, race, and reprisal (prior EEO activity)." *Id.* The letter subsequently dismissed the claims as related to age and race because the allegations failed to rise to the level of severe and pervasive. *Id.* However, seven instances outlined in the letter were accepted for further investigation based on allegations of reprisal. *Id.* Young-Gooch asked for, and was granted the ability to amend her EEO charge to include an allegation whereby she claims a hostile work environment based on reprisal for prior EEO activity for alleging denial of overtime. (Dkt. No. 46, at Ex. 7). Ultimately the VA issued its final agency decision finding no discrimination. *Id.* at Ex. 3, 50:19-21.

Although difficult to determine the exact bases of the discrimination in her own words, Young-Gooch's formal EEO complaint does list several *types* of discrimination such as "harassment," "hostile work environment," and "retaliation;" although none of the allegations identify on what basis, such as age, race, national origin, or gender. *Id.* at Ex. 6. Nonetheless, in a June 8, 2012 letter, the VA Regional EEO Officer informed Young-Gooch that only a claim for hostile work environment based on reprisal warranted further investigation based on her allegations. *Id.* at Ex. 4. Defendant first seeks dismissal for failure to administratively exhaust her two claims. Given the EEOC's acceptance and review of her claims for discrimination based on reprisal, the Court will liberally construe her claim and finds that Young-Gooch has administratively exhausted her second count.

As for age discrimination (disparate treatment), the Court applies a liberal construction to her claims when determining whether they arise out of the exhausted claim

of hostile work environment reprisal from her previous EEO charge and will deem them to be exhausted. *See Miller v. American Airlines, Inc.*, 525 F.3d 520, 525-26 (7th Cir. 2008); *see also Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005). Although questionable whether Young-Gooch was specific in tying the claims of disparate treatment in her Complaint to her EEO charge, the Court nonetheless applies a liberal construction and deems her claims exhausted. Her age discrimination claim is "like or reasonably related to" the administrative charges because her allegations in the Complaint track the events, adverse actions, and circumstances outlined in her EEO charge; namely, unfair shift rotations, changes in performance appraisals, and issues with her work schedule. (Dkt. No. 46-1 at Ex. 6); *see also Reynolds*, 737 F.3d at 1101-02 (noting that the ADEA's "applicable statutory provisions and regulations do not address the permissible scope of a civil action in federal court after bringing an administrative charge" but that "there is no relevant difference between the ADEA and Title VII" with respect to exhaustion). Having exhausted her administrative remedies, the Court proceeds to review her claims substantively.

**B. Disparate Treatment under the ADEA**

Courts analyze claims of disparate treatment under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 451 (7th Cir. 1998). "Under the burden-shifting approach, the plaintiff must come forward with evidence showing that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Carson v. Lake Cty., Ind.*, 865 F.3d

526, 533 (7th Cir. 2017) (quotations omitted); *see also Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016).

However, Young-Gooch does not produce any evidence from which it can be inferred that Szczecinski treated her less favorably than similarly situated employees younger than she in order to form the basis of age-based motive for discrimination. To begin, Young-Gooch failed to name a single younger employee who received more favorable treatment during her deposition. (Dkt. No. 46-1, at Ex. 3.) Furthermore, although she claims that three other nurses retired early because of Szczecinksi's actions towards them, Young-Gooch did not depose any of her coworkers that she claims retired early in order to support her allegations of disparate treatment. (Dkt. No. 48, at 5.) Her statements amount to nothing more than speculation during a "put up or shut up" moment in litigation, and she fails where plaintiffs are required to come forward with specific evidence and not rest on bare allegations of the complaint. *See Steen*, 486 F.3d at 1022.

### C. ADEA Retaliation

On summary judgment, a plaintiff is permitted to establish retaliation claims under either direct or indirect methods. *Szymanski v. Cnty. of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006). Under the direct method a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001) (citing *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997 (7th Cir. 2000). Alternatively, "under the indirect method a plaintiff must show: (1) she engaged in a protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated

employees who did not engage in the statutorily protected activity." *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). "Under either method, [Young-Gooch] must prove that she engaged in a statutorily protected activity. In order for the complaints to constitute protected activity, they must include an objection to discrimination on the basis of age." *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 657-58 (7th Cir. 2012) (citing 29 U.S.C. § 623). Through either method, the question becomes "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the ... adverse employment action." *Oritz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Young-Gooch does not present any information that ties the EEO complaint in 2012 to adverse actions against her by Szczecinski. The only allegation of "but-for" causation is that after "Szczecinski began managing Plaintiff's unit, [Szczecinski] began harassing the older nurses in the unit, including Plaintiff, until three of her older fellow nurses decided to retire early." (Dkt. No. 48, at ¶ 5.) Her only deposition support is as follows:

> A: Sandy Szczecinski.
> Q: So she is the discriminating official here?
> A: Yes.
> Q: And why did she treat you differently?
> A: I would say age and the reason why I'm saying that is we had three other nurses on the unit in RN capacities on the evening shift and every day she started out harassing them. You know, doing a lot of different things and three of them left at the same time. They decided, you know, they were going to work maybe a year or two longer if they could. They decided not to and they just left.

13

> Q: Did they retire?
>
> A: They retired. They left the system.

(Dkt. No. 49-1, at 18:1-17). Allowing Young-Gooch to avoid summary judgment with such bare allegations with no other evidence to support them would defeat the purpose of summary judgment altogether. *See* Fed. R. Civ. P. 56(e) Advisory Committee Note to 1963 Amendment (nothing that the amendments were intended to reverse "Third Circuit doctrine, which permit[ted] the pleadings themselves to stand in the way of granting an otherwise justified summary judgment" because "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Missing is any evidence that the other nurses engaged in a protected activity, evidence that Szczecinski knew any of the nurses engaged in protected activities, or that Szczecinski went after Young-Gooch because of prior EEO complaints. There is no dispute of fact for a jury in this instance because Young-Gooch does not introduce anything more than speculative insight that Szczecinski harassed older nurses with harmful intent. The record is devoid of anything that would lead a reasonable jury to conclude that Szczecinski acted against Young-Gooch or the other nurses because any of them engaged in a protected activity.

### D. Hostile Work Environment Based on Reprisal

Even if the Court construes Young-Gooch's second count for retaliation under the ADEA as a more general claim of hostile work environment based on reprisal for prior EEO activity in 1998 and 2002, the claim fails because she cannot establish that Szczecinski had any knowledge of her prior EEO activity. This lack of knowledge is fatal to her retaliatory claim because "the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory [and] it is not sufficient that [an

employer] could or should have known about [an employee's] complaint." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009); *see also Tomanovich*, 457 F.3d at 668.

First, Young-Gooch never told Szczecinski about her prior EEO activity, (Dkt. No. 49-1, at Ex. 1, 25:20-22); and second, there are no records of her prior EEO activity in the personnel file accessible to Szczecinski. *Id.* at 25:23-25; *see also* (Dkt. No. 47, at ¶ 17) (admissions by Young-Gooch that she never told Szczecinski about the prior EEO charges and that they are not in her personnel file reviewed by supervisors and that Szczecinski denied knowing that Young-Gooch filed prior EEO charges). The only nexus Young-Gooch draws between her prior EEO activity, which occurred nearly twenty years prior, and Szczecinski's knowledge is through Sandy Michalak. She argues the connection is that Michalak trained Szczecinski to take over as Young-Gooch's manager and that Michalak was in her unit at VA Hines when she engaged in her EEO activity in 1998 and 2002. (Dkt. No. 46, at ¶ 4; Dkt. No. 49-1, at Ex. 1, 25:12-23, 27:1-5.) Michalak was not a witness nor was she the alleged bad-actor in Young-Gooch's prior complaints. *Id.* at 27:22-25, 28:1-3. It is far from certain that Michalak knew about her prior EEO activity, she was never deposed, which Young-Gooch clearly could have done, and the facts of any knowledge are not established in the record. In fact, when pressed on how she knew that Michalak told Szczecinski about her decade-old EEO activity, Young-Gooch asserted the following:

- Q: You're asserting that Sandy Michalak told Sandy Szczecinski upon her arrival that you had filed prior EEO's?
- A: Yes.
- Q. And that's just a belief you have?
- A: Yes.
- Q. A feeling?

15

> A: Mm-hmm.
>
> Q: Do you have any evidence to support that Sandy Michalak told Sandy Szczecinski?
>
> A. No.
>
> Q: Did Sandy Michalak tell you she told Sandy Szczecinski?
>
> A: No, she wouldn't do that.

*Id.* at 26:7-20; *see also Id.* at 31:2-5 ("I told you I have no – I have no evidence, but she trained her, they spent a lot of time together. So that's just me – that's my line of thinking"). For her part, Szczecinski flatly denied having knowledge of the prior EEO complaints. (Dkt. No. 46, at ¶ 17.) Young-Gooch "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 474 U.S. at 586. She must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Young-Gooch fails to shoulder the non-movant's burden; therefore, her claim of hostile work environment based on reprisal must fail.

## CONCLUSION

For the reasons set forth above, the Court grants the Defendant's Motion for Summary Judgment as a matter of law as to both counts in the complaint. [44.]

_____
Hon. Virginia M. Kendall
United States District Judge

Date: September 17, 2018

16